**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

THOMAS EDWIN HORN                                                                      PLAINTIFF

VS.                                                                    CIVIL ACTION NO. 5:09cv119-MTP

THOMAS E. VAUGHAN, ET AL.                                                      DEFENDANTS

**OPINION AND ORDER**

THIS MATTER is before the Court on the Motion for Summary Judgment [68] filed by Defendants Thomas E. Vaughan and Yazoo County, Mississippi. Having reviewed the submissions of the parties and the applicable law, the Court finds that Defendants' Motion for Summary Judgment [68] should be granted.

FACTUAL BACKGROUND

Plaintiff Thomas Edwin Horn, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on July 23, 2009. Through his complaint, and as clarified during his *Spears*[1] hearing, Plaintiff alleges claims against Defendants Thomas Vaughan, Sherry Vaughan, and Yazoo County for the denial and/or delay of adequate medical treatment in violation of the Fourteenth Amendment,[2] and alleges a claim against Yazoo County

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing took place on January 29, 2010. *See* Transcript [73].

[2] "The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996); *see also Brown v. Attala County Sheriff's Dep't*, No. 1:08CV96-A-A, 2009 WL 1750333, at *3 (N.D. Miss. Jun. 19, 2009) (citing *Hare*, 74 F.3d at 648 (holding that the subjective deliberate indifference standard applies to both pre-trial detainees under the Fourteenth Amendment and convicted inmates under the Eighth Amendment).

for failure to train and/or supervise Thomas Vaughan and Sherry Vaughan.[3]  *See* Scheduling and Case Management Order [24].  The allegations in Plaintiff's complaint occurred while he was a pre-trial detainee at the Yazoo County Jail (the "Jail").  Plaintiff is currently incarcerated at the Mississippi State Penitentiary at Parchman ("Parchman") serving a ten-year sentence after having been convicted of rape and sexual battery in Yazoo County.

## STANDARD FOR SUMMARY JUDGMENT

This Court may grant summary judgment only if, viewing the facts in a light most favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.  *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).  If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied.  *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985).  The existence of an issue of material fact is a question of law that this Court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues."  *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts.  "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts.  In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary

---

[3]The claims against Sherry Vaughan have been dismissed by separate Order [74].

facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Plaintiff's claims are before the Court pursuant to 42 U.S.C. § 1983.  However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers."  *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981).  Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents."  *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted).  The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

### Denial and/or Delay of Adequate Medical Care

Plaintiff alleges a claim against the Defendants for the denial and/or delay of adequate medical treatment in violation of the Fourteenth Amendment.  Plaintiff claims he arrived at the Jail in August 2007, and informed the staff that he was HIV positive and was taking the medication Atripla.[4]  He claims he continued to receive said medication until approximately

---

[4] Based on the medical records, Plaintiff first tested positive for HIV in October 2004, but did not begin taking Atripla until around February 2007, six months prior to his arrival at the Jail.  *See* Ex. A to Motion [68-1] at 9-10, 12; Ex. E to Pl's Response [77-1].

January 2008, when Defendant Thomas Vaughan was elected as Sheriff of Yazoo County. After numerous complaints to jail officials, Plaintiff was taken to an appointment at G.A. Carmichael Medical Clinic, the medical provider for the Jail, on February 21, 2008. Plaintiff claims he was given a 21-day supply of medication and was scheduled a return appointment in two weeks, but was never taken to his appointment.

Plaintiff claims he saw "Nurse" Sherry Vaughan[5] in mid-March 2008 and expressed concern about his missed appointments and medication and she told him he would see a doctor and receive his medication soon. Plaintiff claims he talked to Sheriff Vaughan about his medical condition and his need for medication. Sheriff Vaughan allegedly responded that Plaintiff would be seeing his wife, the Jail nurse. Tr. [73] at 11-12.

Plaintiff claims he did not receive any medical treatment until August 2008, when an attorney representing him in a criminal matter secured a court order directing the appropriate officials at the Jail to provide him with medical treatment. Plaintiff alleges that he saw a doctor at Yazoo Medical Clinic, which had replaced G.A. Carmichael Medical Clinic as the Jail's medical provider, and had blood work done. Four days later, he was transferred to the Central Mississippi Correctional Facility, and alleges that no medication was sent with him.

Plaintiff was transferred to Parchman on September 21, 2008, where he claims he received a thorough medical evaluation and was allegedly informed that due to the interruption of his medication while at the Jail, he has developed an immunity to "sustiva," a component of

---

[5]Plaintiff alleges that Sheriff Vaughan and the Jail Administrator told him that Ms. Vaughan, Sheriff Vaughan's wife, was the Jail's nurse, and claims that she worked for the Yazoo Medical Clinic. As clarified at the *Spears* hearing, and as reflected in her submissions, Sherry Vaughan is not a nurse. Rather, she was employed by Dr. Hugh Moore at the Yazoo City Medical Clinic as a clerk. *See* Ex. B to Motion [27]; Ex. 2 to Rebuttal [57].

Atripla. Plaintiff claims that as a result of his lack of adequate medical treatment at the Jail, he lost twenty pounds, his condition worsened, and he had to be placed on a more intensive drug treatment with more side effects.

Plaintiff testified that his requests for medical care went through the Jail administration. Tr. [73] at 14. Plaintiff testified that the Sheriff had to approve all outsource transportation to medical appointments. Tr. [73] at 15. Plaintiff apparently claims that Sheriff Vaughan cut his medication off around January 2008, and other than the 21-day supply of medication he received in February 2008, he did not receive his HIV medication or see a doctor to prescribe same until August 2008, after a obtaining a court order. Tr. [73] at 13-14; *see also* Ex. L to Response [77-8].

Plaintiff claims he sued Yazoo County because they make the policy decisions for the Jail and the Sheriff's Department. Tr. [73] at 17-18. He claims the County should have ensured he received proper medical care. Tr. [73] at 18.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 F. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The subjective deliberate indifference standard applies to both pre-trial detainees under the Fourteenth Amendment and convicted inmates under the Eighth Amendment. *Brown v. Attala*

5

*County Sheriff's Dep't*, No. 1:08CV96-A-A, 2009 WL 1750333, at *3 (N.D. Miss. Jun. 19, 2009) (citing *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir.1996)).

A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838.  Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 F. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986).  The Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

Based on the evidence before the Court, there is a genuine issue of material fact as to whether Sheriff Vaughan was deliberately indifferent in delaying Plaintiff's medication.  The record reflects that Plaintiff received Atripla from approximately August 2007 through January

6

2008, when Sheriff Vaughan was elected into office.[6]  It is unclear why Plaintiff stopped receiving medication after January 2008, but it is clear he was given his last thirty-day prescription of Atripla on January 7, 2008.[7]  Plaintiff claims he informed Jail officials in January 2008, that he only had a thirty-day supply of Atripla left.  After complaining to Jail officials, Plaintiff was taken to the doctor in mid-February and given a 21-day supply of medication and was supposed to return for an appointment in two weeks.[8]  Plaintiff was never taken to his return appointment and went from approximately March 2008 to August 2008 without Atripla, and was only taken to the doctor in August after a court ordered Jail officials to provide Plaintiff with medical care.  *See* Ex. L to Response [77-8].  Plaintiff was given a thirty-day prescription for Atripla on August 12, 2008, but was transferred to Central Mississippi Correctional Facility on August 21, 2008, as a result of taking a plea bargain, and never received his medication.[9]  *See* Ex. B to Motion [68-2]; Tr. [73] at 29.

The Sheriff offers no explanation as to why Plaintiff stopped receiving medication in January or for the delay in treatment, although Plaintiff testified he personally talked to him about his need for medication.  The Sheriff states that he is not in charge of prescribing or "un-prescribing" medication for inmates and that he does not make or cancel appointments for inmates.  Sheriff Vaughan states that he had no reason to suspect that the Health Care Services

---

[6]*See* Ex. K-1 to Response [77-6].

[7]*See* Ex. K-1 to Response [77-6].

[8]Plaintiff submitted a partial record indicating he saw a doctor on February 20, 2008, but there is no indication of whether a prescription was written or whether a follow-up appointment was scheduled.  *See* Ex. K-1 to Response [77-7]; *see also* Ex. A to Motion [68-1] at 4.

[9]Plaintiff was ultimately transferred to Parchman.  Tr. [73] at 29.

policy in place at the Jail was not being complied with relating to Plaintiff.  However, Sheriff Vaughan's affidavit fails to address Plaintiff's allegations that he spoke with Sheriff Vaughan about his need for medication and that the Sheriff approves all outsource medical appointments.  *See* Ex. D to Motion [68-4].

Defendants claim Plaintiff should have filled out a sick-call request for his HIV medication, and state that he was aware of the procedure to do so as reflected by his request to see a dentist dated March 4, 2008.  *See* Ex. A to Motion [68-1] at 5-6.  However, Plaintiff claims his handwriting is not on that form and that he has never seen a form like it until it was produced to him in discovery.  *See* Response [77] at 15.  Plaintiff testified that all medical requests went through the Jail administration, and there was no form for a sick call request while he was at the Jail.  He testified that "they pass around a piece of paper, and you put your name on it requesting sick call," and then the trustees or the guards took it to the jailer, "and you would either hear something from them or you wouldn't."  Tr. [73] at 14.  Plaintiff also testified that he spoke with both the Sheriff and the Jail administrator about his need for treatment and HIV medication.  Tr. [73] at 9-12.

However, even assuming Sheriff Vaughan was deliberately indifferent in delaying Plaintiff's treatment, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm."  *Mendoza*, 989 F.2d at 195.  Plaintiff went without HIV medication for approximately three weeks in February, and from approximately mid-March to August 2008.  However, as Defendants point out, when Plaintiff did see a doctor in August 2008, his only complaint was occasional headaches.[10]  *See*

---

[10]Plaintiff testified that he was getting "sicker as he went" without medication.  Tr. [73] at 13.  However, there is no medical evidence to support Plaintiff's claim.  *See Loisel v. Epps*, No.

8

Ex. A to Motion [68-1] at 3.  Plaintiff's lab results showed an HIV viral load of 75,260, within the reportable range for that assay, but no CD4 count was taken.[11]  Plaintiff was given a prescription for a month's supply of Atripla on August 12, 2008.  *See* Ex. A to Motion [68-1] at 1-2.

Plaintiff claims that on September 21, 2008, he was transferred to Parchman and underwent an "intense medical evaluation." Complaint at 10.  He alleges that on or around October 20, 2008, he was told that "due to the interruption of his medication while at Yazoo County, his H.I.V. has developed an immunity to 'sustiva' a drug component of Atripla." *Id.*  However, there is no evidence in the record to support this allegation.[12]  He claims he was told

---

3:07cv35-JCS, 2009 WL 1515079, at *6 (holding that "to prove a claim for delay in treatment, the Plaintiff must provide expert medical testimony on the issue").

[11]"CD4 cells are white blood cells that are attacked by the HIV virus. A CD4 count persistently below 350 indicates a slightly weakened immune system; a CD4 count below 200-250 indicates risk for serious infections." *Spain v. Barnhart*, No. 04 Civ. 2859(DC), 2005 WL 1423358, at *2 n.4 (S.D.N.Y. June 16, 2005).

[12]In his Response [77], Plaintiff states that there are at least eleven pages missing from his medical records, and that there are no Mississippi Department of Corrections ("MDOC") medical records from approximately October 2008 through May 2009.  *See* Response [77] at 9.  The Court ordered the MDOC to produce to Defendants any and all records relating to the examination and/or treatment of Plaintiff, and ordered Defendants to produce any records received pursuant to said order to the Plaintiff.  *See* Order [55] dated 5/10/2010.  Defendants' Notice of Service indicates they produced to Plaintiff documents Bates Nos. 37 – 300 on August 2, 2010.  *See* Notice [71] dated 8/2/10.

Defendants represent that they have received the medical records produced by the MDOC, and the first recorded treatment date is July 9, 2009.  *See* Memo. [69] at 4, footnote 1.  However, Plaintiff attaches lab results dated February 18, 2009 and May 19, 2009.  *See* Ex. F to Response [77-2].  It is unclear why Defendants did not receive these records. Both results indicate Plaintiff's CD4 level was above 350, the predetermined load by the Mississippi Health Department, indicating that no HIV medication was necessary.  *Id.*; Ex. C to Motion [68-3].  Plaintiff also attaches a lab result dated October 29, 2008, but no CD4 level is listed. *See* Ex. H to Response [77-4].

9

that he could not "begin another treatment option until his immune system has declined and his viral load has increased to predetermined government levels." *Id.*

Around October of 2009, while housed at Parchman, Plaintiff was taking Kaletra 50 mg, 2 tablets twice a day, Epivir 150 mg, 2 tablets per day, and Retrovir 300 mg, 1 tablet twice a day. On November 11, 2009, Plaintiff's medication was changed to Kaletra 50 mg, 2 tablets twice a day and Truvada 300 mg, 1 tablet once a day.[13]  *See* Ex. A to Motion [68-1] at 7-8.  Plaintiff's viral load is currently at an undetectable level, indicating that his current HIV medication is wholly effective and that he has reached a therapeutic end point.  *See* Affidavit of Dr. Skip Nolan, Ex. C to Motion [68-3] at 2.[14]  Plaintiff conceded that he is at an undetectable level during his *Spears* hearing.  Tr. [73] at 30.

Even assuming Plaintiff has developed an immunity to Atripla, which is not supported by the medical records,[15] Dr. Nolan opines that there is no medical evidence indicating that any one class of HIV medication is more or less effective than the other.  Even though all medications have side effects, there is nothing in Plaintiff's medical records to suggest that he is tolerating his

---

[13]Defendants represent that these are the medications Plaintiff is currently taking based on the medical records produced by the MDOC.

[14]Defendants submitted the affidavit of Dr. Rathel L. ("Skip") Nolan, III, Director of the Division of Infectious Diseases at University of Mississippi Medical Center ("UMMC").  *See* Ex. C to Motion [68-3].  Dr. Nolan avers that he has reviewed the Plaintiff's medical records from UMMC, the MDOC, and the Yazoo City Medical Clinic and that all of his opinions set forth in his affidavit are stated to a reasonable degree of medical probability, and are based on his education, background and training as a physician in the fields of internal medicine and infectious disease.  *Id.*

[15]Dr. Nolan states that there is nothing in Plaintiff's medical records to suggest a genotype was taken confirming he is resistant to Atripla.  *See* Ex. C to Motion [68-3] at 3. Plaintiff includes a genotypic antiretroviral resistance test, but it is dated prior to his incarceration.  *See* Ex. H-1 to Response [77-5].

current medication any differently from Atripla.[16]  *See* Ex. C to Motion [68-3] at 3.  Plaintiff concedes this statement is "generally true of his current treatment."  *See* Response [77] at 18. Likewise, there is no medical evidence to suggest Plaintiff is suffering from physiological or pathological changes as a result of his new medication.[17]  Dr. Nolan opines that based on the medical evidence, the only difference in Plaintiff taking Atripla and his current medication is that he must take additional tablets each day.  *Id.*   Based on the foregoing, Plaintiff has failed to demonstrate he has suffered a substantial harm as a result of the delay in his medication.[18]  *See Krivan v. Dallas County*, No. 3:99cv1560, 2002 WL 83768, at *3 (N.D. Tex. Jan. 14, 2002)

---

[16]Plaintiff testified that he suffered from internal bleeding and had to have a blood transfusion from the second medication (after Atripla) he was prescribed at Parchman.  Tr. [73] at 30; *see also* Response [77] at 19.  However, there is no medical evidence in the record to support this allegation.  *See Loisel v. Epps*, No. 3:07cv35-JCS, 2009 WL 1515079, at *6 (S.D. Miss. June 1, 2009) (dismissing prisoner's claim for delay of medical treatment, finding that he failed to put forth any evidence, other than his own assessments, to show that he suffered a substantial harm as a result of the delay, and holding that "to prove a claim for delay in treatment, the Plaintiff must provide expert medical testimony on the issue").  Moreover, even assuming he did have a blood transfusion, there is no medical evidence to show that it was caused by his medication.  *Id.*  In his Response, Plaintiff references documents Bates stamped 70-103, and states that document 100 states "amenia probably due to AZT which has been discontinued."  Response [77] at 19.  However, Plaintiff did not attach these documents to his Response and they are not in the record, with the exception of document 72, which does not reflect the cause of anemia.  *See* Ex. A to Defendants' Motion [68-1] at 8.

[17]Indeed, Plaintiff's physical exam on October 1, 2009, reflects the following: "well nourished - healthy - appropriate male."  *See* Ex. A [68-1] at 7.  Plaintiff's only complaint was that he felt he was losing weight.  *Id.*  While Plaintiff was admitted to the infirmary on November 11, 2009, for anemia, there is no evidence demonstrating the anemia was caused by a change in medication.  *Id.* at 8.

[18]When asked how he was damaged by the delay in medication, Plaintiff testified that he shouldn't have had to face immunity issues for Atripla for at least ten years, and that every time he has to change his medication, he has to get sick all over again and has to go through all the side effects from the medication and from the HIV.  Tr. [73] at 30-31.  While it may have been an inconvenience for Plaintiff to switch medications, there is no medical evidence he suffered a substantial harm as a result of the switch and no medical evidence to show that he was sick or suffered as a result.  *See Loisel,* 2009 WL 1515079, at *6.

(dismissing prisoner's claim for delay in medical treatment, holding that prisoner "failed to adduce any evidence that he was physically harmed as a result of the delays in receveining his HIV medication . . . [which was] fatal to his medical care claim").

Plaintiff also alleges claims against Yazoo County alleging they make the policy decisions for the Jail and the Sheriff's Department, and claims against Sheriff Vaughan in his official capacity, which is in effect against Yazoo County. Tr. [73] at 17-18; *see also Mairena* 816 F.2d at 1064. He claims the County should have ensured he received proper medical care. As set forth above, Plaintiff has failed to demonstrate a constitutional violation for the delay of medical treatment. However, even assuming he had, he has failed to show that a policy, custom or practice of Yazoo County was the "moving force" behind the constitutional violation. *Monell,* 436 U.S. at 694. Defendants submitted the Jail's policies on Communications With Inmates, Health Care Services, and Management of Pharmaceuticals. *See* Ex. E to Motion [68-5]. There is no evidence that the Jail's policies caused the alleged delay in medical treatment. *Id.*

Based on the foregoing, Sheriff Vaughan and Yazoo County are entitled to judgment as a matter of law as to Plaintiff's medical claims.[19]

Failure to Train and/or Supervise

Plaintiff alleges a claim against Yazoo County for failure to train and/or supervise Thomas Vaughan and Sherry Vaughan. As previously stated, Sherry Vaughan was not employed by the Jail; rather, she was employed by Dr. Hugh Moore at the Yazoo City Medical

---

[19]Because the Court finds that the Plaintiff's claims against Sheriff Vaughan are not cognizable as constitutional claims, it declines to address the issue of whether the Sheriff is entitled to qualified immunity. *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee,* 195 F.3d 234, 236 (5th Cir. 1999).

Clinic as a clerk. *See* Ex. B to Motion [27]; Ex. 2 to Rebuttal [57]. The claims against Sherry Vaughan have been dismissed by separate Order [74].

"Municipalities are not vicariously liable for the actions of their employees under § 1983. Municipal liability inures only when the execution of a local government's policy or custom causes the injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). In order to hold Yazoo County liable under Section 1983 for its employees' acts, Plaintiff must show: "(1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." *Baker*, 75 F.3d at 200. Plaintiff has failed to demonstrate these elements; rather, he claims "somebody over there should have oversight responsibility." Tr. [73] at 17-18.

Based on the foregoing, Yazoo County is entitled to judgment as a matter of law as to Plaintiff's claims against it for failure to train and/or supervise.

## CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgment [68] should be granted. Accordingly,

IT IS, THEREFORE, ORDERED:

That Defendants' Motion for Summary Judgment [68] is GRANTED and that this action is dismissed with prejudice.

A separate judgment will be entered pursuant to Federal Rule of Civil Procedure 58.

SO ORDERED this the 9th day of November, 2010.

s/ Michael T. Parker
United States Magistrate Judge